

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JANE DOE; | § | |
| | § | |
| PLAINTIFF, | § | CASE NO.: **W16CA180** |
| | § | |
| V. | § | |
| | § | |
| BAYLOR UNIVERSITY; BAYLOR UNIVERSITY | § | |
| BOARD OF REGENTS; AND PATTY | § | |
| CRAWFORD, IN HER OFFICIAL CAPACITY AS | § | |
| TITLE IX COORDINATOR; | § | |
| | § | |
| DEFENDANTS. | § | |

## COMPLAINT AND JURY DEMAND

Plaintiff Jane Doe, by and through her attorneys, submits this Complaint and states the following:

### I.
### PARTIES, JURISDICTION & VENUE

1.   Jane Doe ("Doe") was, at all times relevant, a student at Baylor University.[1]

2.   Defendant Baylor University ("Baylor") is an educational institution and is a private university located in Waco, Texas.

3.   Defendant Baylor University Board of Regents ("Baylor Regents") is the official governing body of Baylor University ("Baylor") and is charged with operating and governing Baylor.

4.   Defendant Patty Crawford ("Crawford") is, and was at all times relevant, the Title IX Coordinator at Baylor. Crawford is responsible for overseeing all Title IX complaints and investigations. As Title IX Coordinator, Crawford is an agent of Baylor.

---

[1] "Jane Doe" has been substituted for the name of the Plaintiff for all causes of action brought by and through this Complaint in order to protect her privacy. Plaintiff plans to file a Motion to Proceed With Fictitious Name.

5.    Baylor receives federal financial assistance and is therefore subject to the dictates of 20 U.S.C § 1681. ("Title IX")

6.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and over state law claims pursuant to 28 U.S.C. § 1367.

7.    Venue in this Court is proper under 28 U.S.C. § 1391 (b) because the events giving rise to this claim took place in this Judicial District, and Defendants reside in this Judicial District.

## II.

### PRELIMINARY STATEMENT AND BRIEF SUMMARY

8.    This is a civil action for monetary relief for injuries Plaintiff Doe has sustained as a result of the acts and omissions of Baylor University, Baylor University Board of Regents ("Baylor Regents") and Patty Crawford ("Crawford") relating to the sexual assault of Plaintiff Doe involving another student and Baylor's policies and deliberately indifferent actions before the assault and afterwards in response in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX") and 42 U.S.C. § 1983.

9.    Plaintiff Doe asserts two separate theories of liability for damages under Title IX: 1) deliberate indifference and clearly unreasonable acts and omissions that created a hostile educational environment for students *before* a sexual assault by a fellow student by conduct and policies making a student more vulnerable to sexual assault itself; and 2) deliberate indifference and a clearly unreasonable response *after* a sexual assault that causes a student victim to endure additional harassment.

10.    Baylor and Baylor Regents intentionally acted by an official policy of deliberate indifference to known sexual assaults so as to create a hostile educational environment.  Baylor and Baylor Regents had actual notice of (and itself created) a long-standing, severely hostile

environment of rape by male students that was condoned and completely unaddressed by Baylor and Baylor Regents officials, including President Ken Starr and Title IX coordinator Patty Crawford.

11.     Baylor and Baylor Regents intentionally acted in a clearly unreasonable fashion, in direct violation of Title IX by acts of custom, and an official policy of deliberate indifference to sexual assaults, directly supporting, maintaining and controlling environments for students that encouraged underage drinking, drug use, rape, and unlawfully discriminating against victims of sexual assault and fostering this hostile environment.

12.     Baylor and Baylor Regents' lack of promptness in investigating and remedying campus sexual assaults further constitutes deliberate indifference, because these investigative delays by Baylor and Baylor Regents helped to create the hostile environment for discriminatory acts of these third parties by Baylor's and Baylor Regents' repeated failure to timely remedy.

## III.

### FACTS

13.     The case arises out of Plaintiff Doe being drugged and abducted from 617 Columbus Avenue, Waco, Texas (also known as "The Rugby House") and her subsequent rape.

14.     Importantly, neither "The Rugby House" nor the Baylor Rugby team were under the control and supervision of the athletic department at Baylor.  In addition, based on information and belief, Plaintiff's assailant was not a member of the Baylor Rugby team.  These facts demonstrate that the sexual assault issues at Baylor were not an "athletic department issue," but were an institution-wide problem that Baylor and Baylor Regents failed to properly address. As demonstrated in the chronological facts stated below, it is clear that Baylor and the Baylor

Regents had created a hunting ground for sexual predators to freely prey upon innocent, unsuspecting female students, with no concern of reprisal or consequences.

## A.

## THE DEAR COLLEAGUE LETTER

15.     The Office of Civil Rights ("OCT"), a division of the United States Department of Education ("DOE), is responsible for the implementation, interpretation, and enforcement of Title IX.

16.     The OCR has promulgated numerous documents outlining the requirements for an educational institution to be in compliance with Title IX, including the Dear Colleague Letter of April 4, 2011 ("DCL"), which specifically concerns peer-on-peer sexual harassment and sexual assault.

17.     The DOE was authorized by Congress, pursuant to 20 U.S.C.A. § 1682, to promulgate regulations to govern the implementation, interpretation and enforcement of Title IX.

18.     The DCL is a "significant guidance document," intended to provide educational institutions with clarity as to the requirements they must follow in order to be in compliance with the DOE.  Pursuant to 72 Fed. Reg. 3432, a "guidance document" is "an agency statement of general applicability and future effect, other than a regulatory action…that sets forth a policy on a statutory, regulatory, or technical issue or an interpretation of a statutory or regulatory issue." A "significant guidance document" is "a guidance document disseminated to regulated entities or the general public that may reasonably be anticipated to…(iv) Raise novel legal or policy issues arising out of legal mandates, the President's priorities, or the principles set forth in Executive Order 12866, as further amended."

19.     The DCL specifically outlines the requirements that educational institutions must follow

regarding peer-on-peer sexual harassment and assault.

20.     A failure to adhere to the requirements outlined in the DCL could result in the loss of federal funding for an educational institution.

21.     The DCL states that "Schools are required to publish a notice of nondiscrimination and to adopt and publish grievance procedures."

22.     The DCL also requires that school "employees are trained so that they know to report harassment to appropriate school officials, and so that employees with the authority to address harassment know how to respond properly."

23.     The DCL requires that a school identify the name, title and contact information of the person designated to coordinate the school's compliance with Title IX.  This coordinator is responsible for overseeing all Title IX complaints.  This coordinator should not have any other job responsibilities that may create a conflict of interest.  Further, the school must ensure that this coordinator has adequate training on Title IX.

24.     The DCL also notes that "If a student files a complaint with the school, regardless of where the conduct occurred, the school must process the complaint in accordance with its established procedures."  In other words, a school is responsible for processing complaints of student-on-student harassment or assault, even if it occurs off campus, because "students often experience the continuing effects of off-campus conduct in the educational setting..."

25.     The DCL states, Title IX requires that the school's inquiry into peer-on-peer sexual harassment and assault "must be prompt, thorough, and impartial."

26.     The DCL requires designated and reasonably prompt timeframes for investigation and resolution. Per the DCL, "Based on OCR experience, a typical investigation takes approximately 60 calendar days following receipt of the complaint."

27.     In addition to resolving complaints promptly, the DCL also addresses OCR recommendations regarding the use of preventive education programs and comprehensive victim services.  Per the DCL, such education and training may be included in "orientation programs for new students, faculty, staff and employees."

28.     The DCL also outlines OCR recommendations regarding complainant safety.  The DCL states, "Title IX requires a school take steps to protect the complainant as necessary, including taking interim steps before the final outcome of the investigation.  The school should take these steps promptly once it has notice of a sexual harassment or violence allegation."  The DCL continues, "When taking steps to separate the complainant and alleged perpetrator, a school should minimize the burden on the complainant, and thus should not, as a matter of course, remove complainants from classes or housing while allowing alleged perpetrators to remain."

## B.

### BAYLOR'S AND BAYLOR REGENTS' FINDINGS OF FACT

29.     On May 26, 2016, Baylor and Baylor Regents issued its Findings of Fact pertaining to the investigation and report done by the law firm of Pepper Hamilton.

30.     The Findings of Fact show Baylor and Baylor Regents had a policy of not having a Title IX coordinator from 2011, until late 2014.

31.     The Findings of Fact show Baylor and Baylor Regents failed to effectively implement Title IX in the wake of the U.S. Department of Education's Office for Civil Rights (OCR) April 4, 2011 "Dear Colleague Letter," the passage of the Violence Against Women Reauthorization Act of 2013 (VAWA), and related authority and guidance.

32.     The Findings of Fact show the insufficient dedication of resources and support to the University's Title IX function led to limited visibility of Title IX on campus.

33.     The Findings of Fact show institutional failures at every level of Baylor's and Baylor Regents' administration directly impacted the response to individual cases and the Baylor community as a whole.

34.     The Findings of Fact show the overwhelming majority of cases did not move forward to an adjudicative hearing.

35.     The Findings of Fact show the University failed to take action to identify and, as needed, eliminate a potential hostile environment, prevent its recurrence, or address any effects on the individual complainant or broader campus community.

36.     The Findings of Fact show in some instances, the burden was placed on complainants to identify and obtain appropriate interim measures.  Administrators failed to exercise appropriate oversight of interim measures, think holistically about the needs of the complainants, follow through and follow up with complainants, provide complainants with continued access to educational opportunities, and take sufficient steps to retain complainants as University students.

37.     The Findings of Fact show once aware of a potential pattern of sexual violence, the University failed to take prompt and effective action to protect campus safety and protect future victims from harm.  Further, Baylor and Baylor Regents failed to consider patterns, trends or climate-related concerns that would enable the University to take prompt and responsive action to individual and community concerns.

## C.

### RECOMMENDATIONS FROM PEPPER HAMILTON

38.     On June 10, 2016, Baylor and Baylor Regents released the "Recommendations" from the Pepper Hamilton review.

39.     These 105 recommendations were adopted as "mandates" by the Interim President David

Garland.

40.     The recommendations show Baylor and Baylor Regents failed to establish Title IX obligations as an institutional priority.

41.     The recommendations show Baylor and Baylor Regents failed to address the restorative and ongoing needs of the victims of reported sexual assaults between 2011-2015.

42.     The recommendations show Baylor and Baylor Regents failed to consider the pattern, trends and climate pertaining to sexual assaults between 2011-2015.

43.     The recommendations show Baylor and Baylor Regents failed to consider whether students were withdrawing from the University due to Title IX concerns.

44.     The recommendations show Baylor and Baylor Regents failed to properly resource (both personnel and handling) the Title IX office to implement required policies, procedures and practices.

45.     The recommendations show Baylor and Baylor Regents failed to have the proper structure within the Title IX office needed to implement required policies, procedures and practices.

46.     The recommendations show Baylor and Baylor Regents failed to develop structured protocols and systems for the coordination of information between and among implementers, including internal case management and documentation that tracks timelines, regular and ongoing internal and external communications, and documents investigative steps, interim measures and steps to eliminate sexual harassment and violence, prevent its reoccurrence and address its effects.

47.     The recommendations show Baylor and Baylor Regents failed to have initial assessment protocols to vet whether a potential pattern of sexual violence was present.

48.     The recommendations show Baylor and Baylor Regents failed to maintain appropriate documentation and records of all reports and steps taken to eliminate, prevent and address the effects of prohibited conduct.

49.     The recommendations show Baylor and Baylor Regents failed to have adequate protocols to interpret patterns, trends and climate assessment for consistent broad remedy analysis and investigation of potential serial offenders.

### D.

#### SPECIFIC FACTS PERTAINING TO THE DRUGGING, ABDUCTION AND RAPE OF JANE DOE

50.     Doe enrolled at Baylor in the Fall of 2013.

51.     Doe had earned an academic scholarship to enroll in Baylor's undergraduate program.

52.     On or about February 28, 2015, Doe was attending a party at the "The Rugby House," a residence off, but near, campus with some friends. Doe was drugged and abducted from the party. She was subsequently raped.

53.     On or about March 1, 2015, Doe contacted her mother and told her about the sexual assault. Doe's mother immediately contacted the Baylor Title IX Coordinator's office and reported the sexual assault. Doe's mother was advised by the Title IX Coordinator's office that something to the effect of: "Doe made six at 'The Rugby House'."

54.     On or about March 20, 2015, Doe met with Baylor's Title IX Coordinator, Patty Crawford and Title IX Investigator, Ian McRary to discuss the sexual assault and to try to begin identifying the assailant. During this meeting, Doe was advised by Crawford and McRary that there had been five previously reported sexual assaults.

55.     On March 30, 2015, McRary emailed a No-Contact Directive to Doe, indicating the name of the assailant and directions regarding enforcement. Doe replied that she did not know her

assailant had been identified.   Immediately, McRary replied indicating that indeed, Doe's assailant had not been identified and that the No-Contact Directive was meant for another victim/incident, completely unrelated to the assault of Doe on or about February 28th.

56.     On March 31, 2015, McRary emailed photos of potential assailants to Doe.  On April 1, 2015, Doe replied indicating that a photo contained her assailant.

57.     On April 2, 2015, McRary informed Doe that he was meeting with another girl who said she had been sexually assaulted at the same "The Rugby House" party.  Later the same day, McRary emailed additional photos to Doe, asking if she recognized the other students in the photo and informed her that there were now two additional reported victims with "similar experiences at the rugby house."

58.     On April 9, 2015, McRary emailed Doe a document with photos and names, inquiring if she recognized any of them.  This is the last communication from McRary or anyone else in the Title IX Coordinator's office, regarding the February 28, 2015 incident.  There was no further correspondence, electronically or by mail, a No-Contact Directive was not issued and no administrative hearing was conducted.

59.     Doe reached out to the Student Life Department for assistance regarding academic accommodations from her professors.  Even with small adjustments, she was still in need of assistance in order to maintain compliance with her scholarship program.  She also reached out to the Vice Provost, requesting a meeting to discuss whether he would consider allowing the school to convert her grades in two classes into "pass or fail" in lieu of a letter/number grade. This option would allow her to maintain a GPA that would allow her to keep her scholarship and qualify to enter into the School of Education.

60.     On May 18, 2015, Doe reached out by email to the Vice Provost, again requesting

assistance regarding her classes and conversion of her letter/number grade to a "pass or fail." Part of the email is Doe's plea to the Vice Provost to help her realize the goal of her "years long dream of graduating from Baylor and working with special needs children."

61.     Doe was unsuccessful in her grade appeal meeting with the Vice Provost. Subsequently, she left Baylor and moved back to her home state.

**FIRST CAUSE OF ACTION**
**DISCRIMINATION ON THE BASIS OF GENDER IN VIOLATION OF 20 U.S.C. § 1681 (TITLE IX)**
**(AGAINST DEFENDANTS BAYLOR AND BAYLOR REGENTS)**

62.     Plaintiff Doe incorporates all paragraphs of this Complaint as if fully set forth herein.

63.     The rape of Plaintiff Doe was a causal result of Baylor and Baylor Regents' deliberate indifference and policy decisions to create a hostile sexual environment. As set forth above, Defendant Baylor and Baylor Regents is liable for the rape itself under the "before" theory of liability, by and through, Title IX for its direct actions in creating and maintaining a hostile sexual environment through its policies and/or deliberate indifference towards reports of sexual assault.

64.     Baylor and Baylor Regents' acts and failures to act perpetrated against Plaintiff Doe, amounted to unlawful sexual harassment and discrimination on the basis of gender. The harassment and discrimination was sufficiently severe and pervasive enough to create an abusive and hostile educational environment for Plaintiff Doe. One or more Baylor administrators or officials, with authority to take corrective action on Plaintiff's behalf, had actual notice of said harassment and discrimination and failed to adequately respond, in violation of their own policies. Those failures amounted to deliberate indifference toward the unlawful sexual conduct and retaliatory conduct that had occurred, was occurring, or was likely to occur. As a result, Plaintiff was subject to a loss of her educational opportunities.

65.     Defendants Baylor and Baylor Regents were deliberately indifferent to Plaintiff Doe's known sexual harassment and the hostile educational environment in which she suffered as a result of its failure to institute any accommodations for Plaintiff Doe's safety, including, but not limited to: (i) excluding her assailant from campus; (ii) providing an escort for Plaintiff Doe around campus; (iii) requiring that her assailant not come within a certain distance of her (No-Contact Directive); or (iv) excluding her assailant from her classrooms.

66.     Additionally, and/or in the alternative, Baylor and Baylor Regents failed to enact and/or disseminate and/or implement proper or adequate procedures to discover, prohibit or remedy the kind of discrimination that Plaintiff Doe suffered.  This failure included, without limitation, non-existent or inadequate customs, policies or procedures for the recognition, reporting, investigation and correction of unlawful discrimination.  Those failures amounted to deliberate indifference toward the unlawful sexual conduct and retaliatory conduct that had occurred, was occurring, or was likely to occur.  As a result of Defendants Baylor and Baylor Regents' deliberate indifference, Plaintiff Doe was forced to leave campus, lose her scholarship and the educational opportunities offered to her at Baylor.

67.     Baylor and Baylor Regents acted with deliberate indifference in deviating significantly from the standard of care outlined by the DOE in the Dear Colleague Letter of 2011 and Baylor Regents' own policies.

68.     As a result of Baylor and Baylor Regents' deliberate indifference, Plaintiff Doe suffered loss of her scholarship, educational opportunities and/or benefits along with injuries, damages and losses, including but not limited to: lost future earnings and loss of earning capacity; damage to and delays in her pursuit of higher education; and fear, anxiety, trauma and emotional distress.

69.     Wherefore, Plaintiff Doe respectfully demands judgment against Defendants Baylor

University and Baylor University Board of Regents awarding:

(1)     Damages in amounts to be established at trial, including, but not limited to, reimbursement and prepayment for all of Plaintiff Doe's tuition and related expenses; payment of Plaintiff Doe's expenses incurred as a consequence of the sexual assault; damages for deprivation of equal access to the educational benefits and opportunities provided by Baylor; and damages for past, present and future emotional pain and suffering, ongoing and severe mental anguish, loss of past, present and future enjoyment of life, and past and present lost earnings and earning capacity;

(2)     Injunctive relief to be determined at trial requiring Baylor to comply with federal law under Title IX;

(3)     Pre-judgment and post-judgment interest;

(4)     Costs;

(5)     Attorneys' fees pursuant to 42 U.S.C. § 1988(b); and

(6)     Such other and further relief as the Court may deem just and proper.

SECOND CAUSE OF ACTION
NEGLIGENCE
(AGAINST ALL DEFENDANTS)

70.     Plaintiff Doe incorporates all paragraphs of this Complaint as if fully set forth herein.

71.     At all times relevant, Defendants Baylor, Baylor Regents and Patty Crawford had a duty to take reasonable measures to protect Plaintiff Doe, as a student at Defendants' institution, because they knew of the culture of interpersonal violence and hostile environment at Baylor. In addition, based on information and belief, Defendants were aware of at least five prior sexual assaults, against other female Baylor students that had been reported as occurring at the "The Rugby House." Thus, Defendants were aware of the need to control the conduct of the students at "The Rugby House" location, and had the ability to control the conduct of the students at "The Rugby House" location. Defendants also had a duty to take reasonable protective measures to protect Plaintiff Doe and other similarly situated students from the risk of sexual abuse and/or

sexual assault, such as the duty to properly warn, train or educate Plaintiff Doe and other students about how to avoid such a risk. This created a special relationship between Defendants and Plaintiff Doe, who was literally entrusted to Defendants' care. Defendants voluntarily accepted the entrusted care of Plaintiff Doe. As such, Defendants owed Plaintiff Doe a duty of care.

72.    Defendants, by and through their agents, servants and employees, knew or reasonably should have known that the male students' conduct at "The Rugby House's" had dangerous and exploitive propensities, as a result of prior reports of sexual assault of female Baylor students at the "The Rugby House," and the prevalence of sexual assault and retaliatory conduct against reporters of sexual assault at Baylor and other universities and/or institutions of higher learning. With this knowledge, it was foreseeable that if Defendants did not adequately exercise or provide the duty of care owed to students, including but not limited to Plaintiff Doe, female students would be vulnerable to sexual assault and retaliatory conduct at the "The Rugby House."

73.    As such, Baylor University is vicariously liable under the theory of respondent superior for the actions/inactions of its employees, including, but not limited to, Patty Crawford.

74.    Defendants, by and through their agents, servants and employees, were acting within the course and scope of their employment at all times relevant and breached their duty of care to Plaintiff Doe, by deviating significantly from the standard of care outlined by the DOE in the Dear Colleague Letter of 2011.

75.    Defendants breached their duty of care by engaging in conduct including, but not limited to:

   (1)    Failing to provide adequate staff training to meet the behavior and social needs of all individuals, including sexual assault victims;

   (2)    Failing to implement a system to screen prospective faculty and staff training

history;

(3) Failing to supervise faculty and staff to ensure proper supervision, control, restraint and monitoring of student athletes;

(4) Failing to implement safeguards for female students adequate to protect them from foreseeable criminal and anti-social activities;

(5) Failing to provide supervision and training in administration of counseling of rape victims following an attack;

(6) Ratifying the sexual misconduct of student athletes by University officials by failing to discourage such behavior in prior instances;

(7) Failing to warn Plaintiff Doe of the "culture of interpersonal violence" brought on by Defendants' failure to address ongoing sexual assaults; and

(8) Failing to warn Plaintiff Doe of at least five previously reported sexual assaults at "The Rugby House."

76. But for the intentional and negligent acts and omissions of Defendants and their violations of the standards of care and statute set forth herein, Plaintiff Doe would not have been injured. Defendants' intentional and negligent acts and omissions, therefore, amount to negligence, negligent failure to warn, train and/or educated, and negligence per se.

77. As a result of the above-described conduct, Plaintiff Doe has suffered, and continues to suffer, great pain of mind and body, physical injury, shock, emotional stress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life, has suffered and continues to suffer spiritually; was prevented and will continue to be prevented from performing Plaintiff Doe's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

78. Wherefore, Plaintiff Doe respectfully demands judgment against Defendants awarding:

(1)      Damages in amounts to be established at trial, including, but not limited to, reimbursement and prepayment for all of Plaintiff Doe's tuition and related expenses; payment of Plaintiff Doe's expenses incurred as a consequence of the sexual assault; damages for deprivation of equal access to the educational benefits and opportunities provided by Baylor; and damages for past, present and future emotional pain and suffering, ongoing and severe mental anguish, loss of past, present and future enjoyment of life, and past and present lost earnings and earning capacity;

(2)      Injunctive relief to be determined at trial requiring Baylor to comply with federal law under Title IX;

(3)      Pre-judgment and post-judgment interest;

(4)      Costs;

(5)      Attorneys' fees pursuant to 42 U.S.C. § 1988(b); and

(6)      Such other and further relief as the Court may deem just and proper.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Doe prays for damages; punitive damages; costs; interest; statutory/civil penalties according to law; attorneys' fees and costs of litigation, pursuant to 42 U.S.C. §1988 or other applicable law; and such other relief as the court deems appropriate and just.

## PLAINTIFF DOE DEMANDS A TRIAL BY JURY ON ALL CLAIMS

Respectfully submitted,

ELLIOTT & LITTLE

PAULA ELLIOTT ESTEFAN
SBN 06547400
Fed ID No. 13697
Email: paula@elliottandlittle.com
J. WAYNE LITTLE
SBN 00784482
Fed ID No. 27418
Email: wayne@elliottandlittle.com
817 North Thompson
Conroe, Texas  77301
(936) 494-4554 (Telephone)
(936) 441-4556 (Metro)
(936) 441-4558 (Fax)
www.elliottandlittle.com
COUNSEL FOR PLAINTIFF DOE